923 P.2d 479

**Darrell J. ATWOOD, Plaintiff–Appellant–Cross–Respondent,**

v.

**WESTERN CONSTRUCTION, INC., an Idaho Corporation, Defendant–Respondent–Cross–Appellant.**

No. 21845.

Court of Appeals of Idaho.

June 25, 1996.

Rehearing Denied Aug. 5, 1996.

Petition for Review Denied Oct. 4, 1996.

Jim Jones & Associates, Boise, for appellant. Jim Jones argued.

Comstock & Bush, Boise, for respondent. John A. Bush argued.

LANSING, Judge.

Darrell J. Atwood appeals from a partial summary judgment dismissing claims for wrongful termination from employment and for breach of the implied covenant of good faith and fair dealing. He contends that the trial court erred in determining that Atwood was an employee terminable at will by his employer, Western Construction Inc. (Western), and in holding that Western was not obligated to make an additional contribution to Atwood's retirement account. Also at issue is whether the trial court erred in denying Western's request for attorney fees pursuant to Idaho Code Section 12–120(3). For the reasons stated below, we affirm the order of partial summary judgment but reverse the district court's denial of Western's request for an award of attorney fees.

## I.

### BACKGROUND

Darrell J. Atwood was hired by the predecessor of Western in 1961, was promoted to equipment superintendent in 1981 and continued in that position until he was terminated from his employment with Western in 1991. According to Atwood, at the time of the termination he was told that the action was taken because Atwood had not informed his supervisor of the purpose of a three-day vacation taken in September 1991. The vacation consisted of a vendor-paid trip to a Caterpillar plant in Peoria, Illinois. Western later contended that Atwood was terminated for unsatisfactory performance which consisted of "bad mouthing" the owners, treating his subordinates harshly and failing to carry out his job responsibilities. Western acknowledges that Atwood was not warned about any of these concerns or counseled that his performance needed improvement prior to his discharge.

Following his termination, Atwood sued Western for wrongful discharge. Atwood alleged that there existed an express oral contract that Atwood's employment would continue until his retirement and, further, that

Western's employee retention practices and general disciplinary procedures created an implied agreement limiting the reasons for which Atwood could be discharged. Atwood also alleged that his termination violated age discrimination laws and that Western violated the covenant of good faith and fair dealing by depriving Atwood of his final year's retirement account contribution.

The district court granted Western's motion for summary judgment on all of Atwood's causes of action except the age discrimination claim. At a subsequent trial, a jury returned a verdict in favor of Western on the cause of action for age discrimination. Atwood now appeals the district court's decision granting summary judgment on the claims for breach of contract and breach of the covenant of good faith and fair dealing. Western cross-appeals the district court's denial of its request for attorney fees pursuant to I.C. § 12–120(3).

## II.

### ANALYSIS

#### A. Standard of Review

Summary judgment is appropriate only when genuine issues of material fact are absent and the case can be decided as a matter of law. I.R.C.P. 56(c); *Whitlock v. Haney Seed Co.*, 110 Idaho 347, 715 P.2d 1017 (1986). The court must construe the record in the light most favorable to the party opposing the motion, drawing all reasonable inferences in that party's favor. *Thompson v. Pike*, 125 Idaho 897, 899, 876 P.2d 595, 597 (1994). If reasonable people could reach different conclusions or inferences from the evidence, the motion must be denied. *Id.* at 900, 876 P.2d at 598; *Doe v. Durtschi*, 110 Idaho 466, 470, 716 P.2d 1238, 1242 (1986). On appeal from an order granting summary judgment, we may freely review the pleadings, depositions, and admissions on file, together with any affidavits, to determine whether there is a genuine issue of any material fact. *Farnsworth v. Dairymen's Creamery Ass'n*, 125 Idaho 866, 876 P.2d 148 (Ct.App.1994).

#### B. Oral Contract

We first address Atwood's claim that the district court erred in granting summary judgment on his claim that there was an express oral contract for the continuation of his employment until he would choose to retire. The district court held that there was no *prima facie* showing of such a contract and that as a matter of law, Atwood was an employee at will.

It is the rule in Idaho, as in most states, that unless an employee is hired pursuant to a contract that specifies the duration of employment or limits the reasons for which an employee may be discharged, the employment is at the will of either party. In an employment-at-will relationship either party may, without incurring liability, terminate the employment at any time for any reason that does not violate public policy. *Ray v. Nampa School Dist. No. 131*, 120 Idaho 117, 120, 814 P.2d 17, 20 (1991); *Metcalf v. Intermountain Gas Co.*, 116 Idaho 622, 624, 778 P.2d 744, 746 (1989); *MacNeil v. Minidoka Memorial Hospital*, 108 Idaho 588, 589, 701 P.2d 208, 209 (1985). However, the parties may agree to a contract term limiting the right of either to terminate the contract at will. Such a term may be express or implied. *Metcalf*, 116 Idaho at 624, 778 P.2d at 746.

Atwood's claim of an express oral agreement that his employment would continue until retirement is based upon a conversation that took place in the late 1980s between Atwood and Western's primary shareholder and president, Richard Heaton. At the time of that conversation, Atwood had been working for Western for over twenty-five years and had for some time been interested in acquiring an equity interest in the company. After learning that Heaton planned to transfer some of his stock to his sons, Atwood initiated a conversation in which he asked whether he could purchase stock in the company. Atwood, in deposition testimony, recalled the ensuing conversation as follows:

> I asked Dick if I could buy interest in the company, the company Western Construction, and he said, no, it would be too much hassle, all the bookwork and this and that, and he says you've got a lot going into the

pension plan and he said with what you got going in there you will have three or four hundred thousand dollars at the time you retire and that would be enough for you to live on, making me believe I was going to be there until I retired at retirement age.

In his affidavit in opposition to Western's motion for summary judgment, Atwood again described the conversation:

He told me that it would be too much of a hassle [to sell some shares in Western]; and that he was not willing to sell me any stock. I asked him what I could expect from Western Construction because I was concerned about whether I would be able to put away some assets for my retirement. Mr. Heaton told me that Western had a liberal pension policy, which I knew, and that it was designed to take care of people when they retire. He told me to stick with Western and I would have around $300,000 to $400,000 in my pension account when I retired.

Heaton gave a similar account of the conversation. Atwood characterizes this discussion as one in which he was promised continued employment with Western in exchange for his continued service until retirement. He asserts that, because this oral term modified his employment contract to provide for a specific duration of employment, he was no longer an employee-at-will, but could only be terminated for unsatisfactory performance.

The trial court concluded that Heaton's statement concerning the pension account value that Atwood could expect was not a promise of continued employment but, instead, simply a statement of fact—a projection of the amount that would accumulate in Atwood's account. We agree.

 A contract is "a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." RESTATEMENT (SECOND) OF CONTRACTS § 1 (1981). A promise is "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." *Id.*, § 2. A distinction must be recognized between promises and mere statements of opinion or prediction. In making this distinction, the inquiry is whether a reasonable person in the position of the listener would conclude that the speaker had made a promise or only expressed an opinion, prediction or expectation. See RESTATEMENT (SECOND) OF CONTRACTS § 2, Comment f (1981); J. Perillo, CORBIN ON CONTRACTS, § 1.15 (1993). This is a factual issue and therefore ordinarily is to be determined by a jury. However, if the evidence relating to the alleged promise is not conflicting and admits of but one inference, the court may decide the issue as a matter of law. *Watson v. Idaho Falls Consolidated Hospitals, Inc.,* 111 Idaho 44, 47, 720 P.2d 632, 635 (1986); *Johnson v. Allied Stores Corp.,* 106 Idaho 363, 368, 679 P.2d 640, 645 (1984).

 Thus, we must examine whether a reasonable person in Atwood's position would have concluded that Heaton promised Atwood lifetime employment with Western and that Atwood would only be discharged for cause. We agree with the district court's conclusion that the statement upon which Atwood relies in this case does not permit conflicting inferences and that reasonable minds could not reach different conclusions concerning the import of the statement. Given the language used and the context in which Heaton's statement was made, it can only be perceived as a prediction or opinion regarding Western's retirement plan. Heaton attempted to reassure Atwood about his retirement concerns by pointing out that the company retirement plan was a generous one and by estimating the amount that would accrue in Atwood's retirement account if the employment continued until retirement. We cannot accept Atwood's assertion that making such a projection or estimate of potential retirement benefits will bind an employer to retain the employee until such employee elects to retire, or will limit the grounds for which the employee may be terminated. The district court correctly held that the statements upon which Atwood relied did not modify his at-will employment contract.

## C. Implied-in-Fact Contract

We turn now to Atwood's assertion that Western's long-standing policies and proce-

dures regarding employee discipline and terminations impliedly altered the employment contract to preclude termination without good cause and without warning. Atwood avers that over the years, management at Western adhered to two significant policies or practices that evidence an intent to limit the employer's right to discharge workers at will. First, the supervisors at Western customarily gave an employee one or more warnings and an opportunity to improve performance before an employee was discharged. Second, the consistent practice at Western was to terminate only for good cause. As evidence substantiating this claim, Atwood points to Western's history of work force stability with little employee turnover, as demonstrated by an employee roster; testimony that no other supervisory personnel were fired during Atwood's tenure at Western; Richard Heaton's testimony that employees who satisfactorily complete their ninety-day probationary period are full-time employee[s] "as long as there's a job for them and they do their job"; and terms in the employee policy manual that provide for three written warning notices prior to discharge for unacceptable conduct.[1] According to Atwood, these customs of long-term employee retention and of allowing employees an opportunity to improve their performance before discharging them evidence an implied promise by Western to refrain from terminating employees without good cause or a warning.

A limitation on the right of the employer to terminate an employee may be implied if, from all the circumstances surrounding the employment relationship, a reasonable person could conclude that both parties intended that the employer's right to terminate the relationship at will had been limited by an implied-in-fact agreement. *Sorensen v. Comm Tek, Inc.*, 118 Idaho 664, 667, 799 P.2d 70, 73 (1990); *Metcalf*, 116 Idaho at 624, 778 P.2d at 746; *Spero v.*

*Lockwood, Inc.*, 111 Idaho 74, 75, 721 P.2d 174, 175 (1986). An implied-in-fact contract term is one that is inferred from the conduct of the parties. *Farnworth v. Femling*, 125 Idaho 283, 287, 869 P.2d 1378, 1382 (1994), *cert. denied*, 513 U.S. 816, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994); *Dana, Larson, Roubal and Associates v. Board of Commissioners of Canyon County*, 124 Idaho 794, 802, 864 P.2d 632, 640 (Ct.App.1993). To demonstrate such a contract, the facts must be such that the intent to make a contract may be fairly inferred. *Id.*

Some jurisdictions have held that the stability of a company's work force and an employer's custom of terminating employees only for good cause are factors supporting a claim of an implied contract term eliminating the employer's right to terminate at will. *See, e.g., Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 254 Cal.Rptr. 211, 765 P.2d 373 (1988). We are of the view, however, that such evidence, standing alone, is insufficient to modify the at-will status of employees. We agree with the conclusion expressed by the Nevada Supreme Court in *Vancheri v. GNLV Corp.*, 105 Nev. 417, 777 P.2d 366, 370 (1989): "Based upon the law and policy considerations, we hold that general expressions of job longevity and advancement, and the established disciplinary procedure as described in this case, are not, as a matter of law, sufficient to establish a prima facie case rebutting the at-will employment presumption." The Court reasoned that:

> Standardized disciplinary procedures are generally positive additions to a business. They provide employers a method of cautioning employees, and afford employees an opportunity to improve job performance in order to retain employment. They also create a general consistency and security in the work place. If we were to hold that

1. Atwood relies upon the manual only as evidence of the policy of providing warnings before termination. He does not argue that the employee manual itself provides elements of the employment contract. Atwood concedes that because he had not read the manual and did not rely upon it, the manual did not modify his employment agreement. *See Spero v. Lockwood, Inc.*, 111 Idaho 74, 75, 721 P.2d 174, 175 (1986); *Holmes v. Union Oil of California*, 114 Idaho 773, 778, 760 P.2d 1189, 1194 (Ct.App.1988). In addition, the manual contains a disclaimer stating that its contents are not to be considered a contract or a guarantee of continued employment.

the establishment of standard disciplinary procedures for employees is, in and of itself, sufficient to convert an at-will employee to an employee who can be fired only for cause, employers would be reluctant to continue to establish them.

*Id.* 777 P.2d at 369–70. The Supreme Court of New Mexico came to a similar conclusion in *Hartbarger v. Frank Paxton Co.*, 115 N.M. 665, 857 P.2d 776 (1993), *cert. denied,* 510 U.S. 1118, 114 S.Ct. 1068, 127 L.Ed.2d 387 (1994) stating:

> As a matter of policy, this Court will not consider evidence that a company does not usually fire employees without a good reason as *by itself* establishing that the company does not maintain an at-will employment policy. To do otherwise would encourage employers to occasionally fire employees for no other reason than to show that they maintain the freedom to do so.

*Id.* 857 P.2d at 785. For the reasons stated by the Nevada and New Mexico courts, we are unwilling to infer from the longevity of Western's work force and Western's policy of warning before discharge an implied contract limiting Western's discretion to terminate employees.

**D. The Implied Covenant of Good Faith and Fair Dealing**

 Idaho law recognizes a cause of action for the breach of an implied covenant of good faith and fair dealing. *Metcalf,* 116 Idaho at 626, 778 P.2d at 748. Such a covenant is found in all employment agreements. *Mitchell v. Zilog,* 125 Idaho at 709, 715, 874 P.2d 520, 526 (1994); *Sorensen,* 118 Idaho at 669, 799 P.2d at 75. An action by one party that violates, qualifies or significantly impairs any benefit or right of the other party under an employment contract, whether express or implied, violates the covenant. *Metcalf,* 116 Idaho at 627, 778 P.2d at 749; *Thompson v. City of Idaho Falls,* 126 Idaho 587, 593, 887 P.2d 1094, 1099 (Ct.App.1994).

Western had established a retirement and disability plan for its employees which called for annual contributions to be made by Western to the employees' retirement accounts. Atwood was discharged on September 27,

1991. No contribution to his retirement account was made by Western for 1991. Atwood contends that terms of the plan require an employer contribution for any year in which the employee has worked at least 1000 hours. He alleges that Western, by not contributing to his account for the contract year 1991, denied him a benefit that had accrued.

 Western asserts that this claim is preempted by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461 (1994). That federal act preempts all state laws that relate to any employee benefit plan coming within the purview of ERISA. 29 U.S.C. § 1144(a). The ERISA preemption has been called "one of the broadest preemption clauses ever enacted by Congress." *Joanou v. Coca–Cola Co.,* 26 F.3d 96, 99 (9th Cir.1994); *Greany v. Western Farm Bureau Life Ins. Co.,* 973 F.2d 812, 817 (9th Cir.1992). It precludes courts from entertaining any state law claims arising from an employee benefit plan, whether they are grounded in contract or tort. *Joanou,* 26 F.3d at 99. Atwood's claim seeking a retirement account contribution by Western for 1991 is based upon rights arising under an employee benefit plan. Therefore, this state law claim is preempted by ERISA, and its dismissal must be affirmed.

**III.**

**ATTORNEY FEES**

 Following the jury's verdict in favor of Western on the age discrimination claim, Western moved for costs and attorney fees. Western's request for an award of attorney fees was based upon I.C. § 12–120(3), which makes such an award mandatory in "any civil action to recover on ... [a] contract relating to the purchase or sale of ... services...." If a contract claim is of a type embraced within the statute is asserted, the proponent's failure to prove the existence of the alleged contract does not insulate that party from liability to pay the prevailing party's attorney fees. *Magic Lantern Productions, Inc. v. Dolsot,* 126 Idaho 805, 808, 892 P.2d 480, 483 (1995); *Farmers Nat'l Bank v. Shirey,* 126 Idaho 63, 73, 878 P.2d 762, 772 (1994); *Hilt v. Draper,* 122 Idaho 612, 622,

836 P.2d 558, 568 (Ct.App.1992). Therefore, attorney fees are allowed when the defendant has been successful in defeating such a contract claim.

 The trial court concluded that a contract to render personal services in the form of a master-servant relationship is not covered by Section 12–120(3) and, consequently, denied Western's request for attorney fees. We deem this decision to be erroneous. Subsequent to the trial court's decision, our Supreme Court addressed whether attorney fees are recoverable under Section 12–120(3) in an action on a contract for personal services. In *Property Management West, Inc. v. Hunt*, 126 Idaho 897, 899, 894 P.2d 130, 132 (1995), Hunt, who had been a director, officer and general manager of the plaintiff corporation, filed a counterclaim for a share of the corporation's profits, which the corporation had agreed to distribute to Hunt as a part of her compensation package. The Supreme Court characterized this claim as one to recover on a contract for the purchase or sale of services and held that the corporation, as the prevailing party, was entitled to attorney fees under I.C. § 12–120(3). In view of the *Hunt* decision, we conclude that actions on employment contracts are subject to the attorney fee provisions of I.C. § 12–120(3). Consequently, Western should be granted attorney fees it incurred in successfully defending against Atwood's claims for breach of express and implied contract terms, including the claim for violation of the implied covenant of good faith.

 This award, however, is not to include fees attributable to the defense of Atwood's cause of action for age discrimination. That claim, though rooted in the employment relationship, sought recovery for infringement of rights created not by contract but by statutes, I.C. § 67–5909 and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621–634 (1994). Where the gravamen of a cause of action is the violation of a statute, I.C. § 12–120(3) does not apply. *Gumprecht v. Doyle*, 128 Idaho 242, 245, 912 P.2d 610, 613 (1995); *Scott v. Buhl Joint School Dist. No. 412*, 123 Idaho 779, 786, 852 P.2d 1376, 1383 (1993).

## IV.

## CONCLUSION

The summary judgment entered in favor of defendant Western Construction, Inc. on Atwood's causes of action for breach of express and implied terms of his employment contract is affirmed. The district court's order denying Western's motion for an award of attorney fees incurred on the contract claims is reversed, and the case is remanded to the district court for entry of an order granting attorney fees. No attorney fees have been requested on appeal.

Costs on appeal to respondent.

WALTERS, C.J., and PERRY, J., concur.