41 P.3d 263

## NORTHWEST BEC–CORP and Northwest Pharmaceutical, Inc., Plaintiffs–Appellants–Cross Respondents,

v.

## HOME LIVING SERVICE f/k/a Home IV Care, Inc., and Janet Hughes, individually, Defendants–Respondents–Cross Appellants.

No. 26558.

Supreme Court of Idaho, Idaho Falls, September 2001 Term.

Jan. 18, 2002.

Nielson & Reece, P.L.L.C., Pocatello, for appellants-cross respondents. Nick L. Nielson argued.

Racine, Olson, Nye, Budge & Bailey, Pocatello, for respondents-cross appellants. John R. Goodell argued.

KIDWELL, Justice.

Appellants Northwest Bec–Corp and Northwest Pharmaceutical, Inc. appeal the district court's grant of summary judgment for the defendants, Home Living Service and Janet Hughes. Northwest Bec–Corp and Northwest Pharmaceutical, Inc. filed an action alleging breach of a confidential nondisclosure agreement by Hughes as well as misappropriation of trade secrets and tortious interference with contracts against Home Living Service and Hughes. The district court entered a grant of summary judgment finding that the appellants had not established a genuine issue of material fact. On cross appeal, Home Living Service and Hughes appeal the district court's determination of attorney fees. We affirm the district court's grant of summary judgment and award of attorney fees.

## I.

### FACTS AND PROCEDURAL BACKGROUND

Janet Hughes (Hughes) was employed by Long Term Care (LTC) as the Director of Pharmacy from January of 1996 through February of 1999. On September 17, 1996, Hughes entered into a Confidential Nondisclosure Agreement (Agreement) with LTC. Under the terms of the Agreement, she was not to reveal any of LTC's proprietary information including customer lists, video presentations, and other trade secrets and information developed by LTC. The district court found that Hughes was forced to sign the Agreement to remain employed with LTC. In February of 1999, Hughes left LTC and began working as a Pharmacist/Director of Pharmacy Development for Northwest Pharmaceutical, Inc. (NWPI), a wholly owned subsidiary of Northwest Bec–Corp (NWBC). NWBC was aware of the Agreement, and began negotiations to purchase LTC to eliminate any potential liability issues. As part of the purchase of LTC, NWBC acquired the proprietary information mentioned above,

and Hughes' Confidential Non Disclosure Agreement was assigned to NWBC. Hughes left NWPI in May of 1999 and accepted the position of staff pharmacist with Super Save Drug (SSD) and Home Living Service (HLS), where she is currently employed. All of the companies involved offer substantially similar services to their customers including pharmaceutical supplies and services, training seminars, and other residential long-term care services.

After Hughes' departure from NWPI, approximately ninety NWPI customers ended their business relationship with NWPI and began doing business with HLS. On July 27, 1999, NWBC and NWPI filed a verified complaint containing three main causes of action against Hughes and HLS. The plaintiffs alleged that Hughes had breached the Confidential Nondisclosure Agreement. They alleged that Hughes and HLS had misappropriated NWBC and NWPI trade secrets in violation of the Idaho Trade Secrets Act. Their final claim was that Hughes and HLS tortiously interfered with NWBC's and NWPI's customer contracts.

The defendants filed motions to dismiss and attached affidavits. The district court treated them as motions for summary judgment because "matters outside the pleadings" were presented to the district court for consideration. The district court granted the motions. The district court found no evidence in the record to support plaintiffs' claim that Hughes or HLS or both had misappropriated the trade secrets. The district court also found no evidence in the record of the existence of any contracts between the plaintiffs and their customers with which the defendants allegedly interfered. The court further found that the Agreement was nonassignable by either party. The district court awarded Hughes costs and approximately one-half of her attorney fees. It awarded HLS costs, but no attorney fees. Each side filed a timely notice of appeal and cross appeal.

## II.

### STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). When reviewing an appeal from a grant of summary judgment, this Court employs the same standard used by the district court originally ruling on the motion. *S. Griffin Constr., Inc. v. City of Lewiston,* 135 Idaho 181, 185, 16 P.3d 278, 282 (2000). On appeal, this Court will ascertain whether any genuine issues of material fact exist, and whether the moving party is entitled to summary judgment as a matter of law. *Coghlan v. Beta Theta Pi Fraternity,* 133 Idaho 388, 400–01, 987 P.2d 300, 312–13 (1999). In a motion for summary judgment, this Court should liberally construe all facts in favor of the nonmoving party and draw all reasonable inferences from the facts in favor of the nonmoving party. *S. Griffin Constr., Inc.,* 135 Idaho at 185, 16 P.3d at 282. Summary judgment must be denied if reasonable persons could reach differing conclusions or draw conflicting inferences from the evidence presented. *Orthman v. Idaho Power Co.,* 130 Idaho 597, 600, 944 P.2d 1360, 1363 (1997). At all times, the moving party has the burden of establishing the lack of a genuine issue of material fact. *Id.* To meet this burden, the moving party must challenge in its motion and establish through evidence that no issue of material facts exists for an element of the nonmoving party's case. *Smith v. Meridian Joint Sch. Dist. No. 2,* 128 Idaho 714, 719, 918 P.2d 583, 588 (1996). The nonmoving party "may not rest upon the mere allegations or denials of that party's pleadings, but the party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." I.R.C.P. 56(e). If the moving party challenges an element of the nonmoving party's case on the basis that no genuine issue of material fact exists, the burden then shifts to the nonmoving party to present evidence that is sufficient to establish a genuine issue of material fact. *Smith,* 128 Idaho at 719, 918 P.2d at 588. When presenting affidavits, they "shall be made on personal knowledge, shall set forth such facts as would be admissible in

evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." I.R.C.P. 56(e). The nonmoving party must submit more than just conclusory assertions that an issue of material fact exists to establish a genuine issue. *Coghlan,* 133 Idaho at 401, 987 P.2d at 313. "[A] mere scintilla of evidence or only slight doubt as to the facts" is not sufficient to create a genuine issue of material fact for purposes of summary judgment. *Samuel v. Hepworth, Nungester & Lezamiz, Inc.,* 134 Idaho 84, 87, 996 P.2d 303, 306 (2000).

## III.

## ANALYSIS

### A. The Evidence Before This Court Does Not Establish that Janet Hughes and HLS Misappropriated NWBC and NWPI's Trade Secrets.

■ Appellants assert that the loss of approximately ninety customers following the departure of Hughes was the result of the misappropriation of NWBC and NWPI's trade secrets by Hughes and HLS. Although they agree that the district court properly determined that LTC's customer lists and video presentations were trade secrets, the appellants believe that the court failed to acknowledge numerous deficiencies in the affidavits submitted by the defendants, particularly the affidavit of Hughes. The affidavits do not contain specific denials of particular facts that are crucial for the defendants to meet their burden. The appellants contend that the district court did not properly determine that Hughes and HLS had met their burden under their motion for summary judgment before shifting the burden to NWBC and NWPI.

Neither side disputes the district court's finding that LTC's customer list and video presentations are trade secrets as defined by Idaho Code section 48–801(5). The dispute focuses on whether actual misappropriation occurred. At the center of this claim is whether HLS and Hughes met their burden under the motion for summary judgment by proving that misappropriation as defined in I.C. § 48–801(2) did not occur. As discussed in the standard of review, if HLS and Hughes met their burden through the affidavits submitted, then the burden shifted to NWBC and NWPI to provide evidence that demonstrated there was a genuine issue of material fact. Without such evidence, summary judgment would be proper.

In support of their initial motion for summary judgment, HLS and Hughes submitted Hughes' affidavit. Her affidavit traced her employment history, culminating with her employment with HLS. With respect to the misappropriation claim, the following statements from Hughes' affidavit were most applicable:

I am certain that I do not have any information that would be characterized as confidential information. I do not have nor have I ever disclosed a customer list, programs, software, or "in house" developed procedures of Long Term Care. The bottom line is that I have never disclosed any so-called confidential information to any unauthorized person.

In support of their final motion for summary judgment, HLS and Hughes submitted the affidavits of Traci Berreth, Lori Gebo–Shaver, Loana Lyman, and John Goodell. Berreth and Gebo–Shaver's affidavits both provided details about HLS and SSD's extensive marketing efforts to assisted living facilities from May of 1999 to present. Both affidavits and the attached exhibits described in detail the process used by HLS and SSD to attract new customers, including obtaining a list of facilities classified as a public document from a subdivision of the Idaho Department of Health and Welfare, targeting facilities located nearby, sending mailings containing a developed marketing plan to the facilities, wining and dining the facilities' administrators, and conducting "wellness seminars" at the facilities. Both affiants categorically denied any use or possession of any trade secrets, customer lists, video productions, or other proprietary information in their efforts to increase their customer base.

In response, NWBC and NWPI submitted the affidavit of Crae Berrett in opposition to the initial motion for summary judgment as well as his supplemental affidavit in opposi-

tion to the final motion for summary judgment. His affidavit also traced Hughes' employment history, but provided additional details about LTC's customer lists at issue in this case. Any pertinent information contained in his affidavit was prefaced by the statement "upon reviewing information that has been presented in this lawsuit" or a similar comment. He claimed to have knowledge that Hughes disclosed LTC's customer list, one or more of LTC's video presentations, and proprietary information pertaining to the operations of LTC. NWBC and NWPI argue that Berrett's affidavit provided enough facts to create a genuine issue; HLS and Hughes argue that Berrett's affidavit does not meet the standard outlined by I.R.C.P. 56(e). The district court held that Berrett's supplemental affidavit was insufficient to meet NWBC and NWPI's burden.

Even though the district court judge advised them to submit additional evidence, such as statements from employees, customers, or associates, to survive summary judgment, NWBC and NWPI instead chose to rely upon case law to support their position that they did not need to submit additional evidence. The appellants argued that *Pepsi-Co, Inc. v. Redmond*, 54 F.3d 1262 (7th Cir. 1995), supported their position. In *PepsiCo, Inc.*, the plaintiff was seeking injunctive relief; the issue was whether the inevitable disclosure of trade secrets would occur. The case involved "particularized plans or processes" developed by the plaintiff to market its sports and new-age drinks, not general knowledge and skill acquired by the employee during the regular course of employment.

The present case is distinguishable from *PepsiCo, Inc.* This case requires the district court to determine if there has been misappropriation of trade secrets, not if there is potential for future disclosure or use of trade secrets. PepsiCo, Inc. presented *substantial* evidence to support its motion for injunctive relief. It did not merely file a complaint and then sit idly by while the defendants introduced affidavits, marketing plans, and testimony to quash the motion. NWBC and NWPI needed to provide evidence to support

their assertion that misappropriation had occurred.

The district court held that the language in I.C. § 48–801(2) is clear and unambiguous on its face. In order to prevail on a misappropriation claim, the claimant must prove that the adverse party acquired, disclosed, or used the claimant's trade secrets. The district court summarized that based on the specific statutory language used as well as the contemporary context at the time the statute was passed, the legislature did not intend the statute to be read so broadly as to preclude the hiring of an employee from a competitor; the legislature also did not intend that merely hiring a competitor's employee constitutes acquiring a trade secret. An employee will naturally take with her to a new company the skills, training, and knowledge she has acquired from her time with her previous employer. This basic transfer of information cannot be stopped, unless an employee is not allowed to pursue her livelihood by changing employers. As Judge Shadur stated, "[a]ny other rule would force a departing employee to perform a prefrontal lobotomy on himself or herself." *Fleming Sales Co., Inc. v. Bailey*, 611 F.Supp. 507, 514 (D.C.Ill.1985). Hughes' training on maintaining good customer relationships, developing new clients, and serving current clients is not a trade secret, but rather job skills she developed over time while employed with LTC, NWBC, and NWPI. The evidence in the record is that Hughes left her employment with NWBC and NWPI to begin working for HLS and SSD; shortly thereafter, approximately ninety customers ended their business relationship with the appellants and began doing business with HLS. HLS and Hughes submitted multiple affidavits that provided alternative explanations for the customer changes that do not involve misappropriation.

This Court affirms the district court's holding that HLS and Hughes met their burden of establishing the absence of any genuine issue of material fact through the affidavits and exhibits they submitted. Hughes' affidavit, along with the additional affidavits and exhibits submitted by HLS, provide details of a well-executed marketing plan and deny the

misappropriation of any trade secrets. They establish that there was no genuine issue of material fact in this case. The burden shifted to NWBC and NWPI to present evidence that demonstrated there was a genuine issue of material fact in order to survive summary judgment. Their attempts at providing additional evidence, including the supplemental affidavit of Berrett and their reliance on *PepsiCo.*, were inadequate to survive the motion for summary judgment.

### B. Janet Hughes and HLS Did Not Tortiously Interfere With NWBC and NWPI's Contracts.

■ The appellants argue that the court did not address evidence, presented in Crae Berrett's affidavit, concerning conversations with Hughes regarding LTC's customers and contracts. They assert that genuine issues of material fact exist regarding HLS and Hughes' development of new customers that occurred simultaneously with those customers leaving NWBC and NWPI.

■ To establish a claim of tortious interference with a contract, the plaintiff must establish the existence of a contract, knowledge of the contract on the part of the defendant, defendant's intentional interference that causes a breach of the contract, and injury to the plaintiff as a result of the breach. *Farmers Nat'l Bank v. Shirey*, 126 Idaho 63, 72, 878 P.2d 762, 771 (1994) (citing *Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.*, 121 Idaho 266, 283–84, 824 P.2d 841, 858–59 (1991)). The plaintiff must establish these elements before the burden switches to the defendant to explain the interference with the plaintiffs' contracts. *Barlow v. Int'l Harvester Co.*, 95 Idaho 881, 893, 522 P.2d 1102, 1114 (1974).

This Court finds that NWBC and NWPI did not meet their burden because they did not establish an element of their case, namely the existence of their customer contracts. Providing such evidence was necessary before the burden would have shifted to Hughes and HLS. The burden was never on Hughes and HLS to present evidence regarding their contact with potential customers because NWBC and NWPI never established that there were contracts with which the respondents could interfere.

### C. Whether the Confidential Nondisclosure Agreement Was Nonassignable Is Moot Following the Decision of this Court.

This Court has held that there was no evidence of any misappropriation of NWBC and NWPI's trade secrets by Hughes and HLS. Hughes needed to misappropriate their trade secrets in order to breach the confidential nondisclosure agreement. Because there was no evidence of misappropriation, whether the confidential nondisclosure agreement was nonassignable or breached is moot.

### D. The District Court Correctly Held that Home Living Service and Janet Hughes Were Not Entitled to Full Attorney Fees.

■ The cross appellants argue that the district court erred by not awarding any attorney fees to HLS and not awarding full attorney fees to Hughes. The express language in paragraph five of the Confidential Nondisclosure Agreement states that the *prevailing party* in any proceeding "relating to this Agreement ... shall be entitled to recover from the non-prevailing party. ...." They contend that the Agreement does not limit recovery to signatories on the contract and the use of "shall" makes the award of attorney fees mandatory. Yet, HLS cites no authority to support its claims that a contract between Hughes and her employer was written to encompass another entity not a party to the contract. NWBC and NWPI did not even maintain a cause of action against HLS under this Agreement; their claims are grounded in tort and statutory rights. HLS was not a party to this Agreement. HLS wants the language of the Agreement interpreted so broadly as to include it in the "prevailing party" category. The district court properly held that such a broad interpretation should not be afforded to HLS.

■ Hughes also cites no authority to support her claim that she should be awarded full attorney fees. The district court properly exercised its discretion in declining

to award Hughes all of her attorney fees because a portion of them was incurred during the preparation of her counterclaim.

■ Hughes and HLS also cite Idaho case law interpreting I.C. § 12–120(3) to provide that employment contract disputes are commercial transactions, supporting a mandatory award of attorney fees in this case.

Idaho Code section 12–120(3) provides for the mandatory recovery of attorney fees in an action to recover on a contract, including one involving a commercial transaction. HLS and Hughes assert that the Confidential Nondisclosure Agreement, as part of Hughes' employment contract, is a commercial transaction based on their interpretation of two Idaho cases.

In *Prop. Mgmt. West, Inc. v. Hunt*, 126 Idaho 897, 894 P.2d 130 (1995), PMW sued Hunt on a variety of theories after their business relationship soured. A major issue on appeal was whether the district court erred in granting attorney fees under I.C. § 12–120(3) to PMW as the prevailing party on the claims. *Id.* This Court held that PMW could not be awarded attorney fees on two of the claims upon which PMW prevailed because, although the underlying relationship between the parties may have been based on Hunt's employment with PMW, the claims were grounded in tort, not in contract. *Id.* at 899–900, 894 P.2d at 132–33. PMW had also been awarded attorney fees under I.C. § 12–120(3) for prevailing on Hunt's counterclaim. The counterclaim was based on Hunt's assertion that she had a contract for a distribution of company profits that had not been fulfilled by PMW. This Court held that her counterclaim sought to recover on a contract related to the purchase or sale of services, falling within the meaning of I.C. § 12–120(3). Therefore, an award of attorney fees to PMW was appropriate. *Id.* at 900, 894 P.2d at 133.

In the second case, the plaintiff sued his former employer for, among other things, wrongful termination of his employment contract and age discrimination. *Atwood v. W. Constr., Inc.*, 129 Idaho 234, 923 P.2d 479 (Ct.App.1996). The Idaho Court of Appeals held that in light of the *Hunt* decision, employment contracts were commercial transac-

tions and actions on such contracts were subject to I.C. § 12–120(3). *Id.* at 241, 923 P.2d at 486. Therefore, Western Construction was entitled to attorney fees on the breach of contract claims because it was the prevailing party. However, it held that I.C. § 12–120(3) did not apply to claims rooted in the violation of a statute, therefore no attorney fees were allowed on the age discrimination claim since it was rooted in rights created by statutes. *Id.*

HLS and Hughes' reliance on these cases is misplaced because their factual situation was specifically rejected by both cases. Hughes was awarded adequate attorney fees; neither of these cases adds to her argument that she should be awarded full attorney fees. HLS' reliance is misplaced because NWBC and NWPI's action against them for misappropriation of trade secrets is grounded in the statutory scheme of the Idaho Trade Secrets Act. NWBC and NWPI's cause of action against HLS for tortious interference with contracts is sound in tort. Neither of these claims is an action to recover on a contract between NWBC and NWPI and HLS; both claims are based in rights created by statute or tort. The district court properly denied the cross appellants attorney fees under I.C. § 12–120(3).

Hughes and HLS contend that attorney fees should be awarded under I.C. § 12–121, because NWBC and NWPI's claims were without reasonable foundation in law and fact because they produced no evidence to support their case other than unfounded speculation.

■ Idaho Rule of Civil Procedure 54(e)(1) provides that attorney fees "may be awarded by the court only when it finds, from the facts presented to it, that the case was brought, pursued or defended frivolously, unreasonably or without foundation." An award of attorney fees under I.C. § 12–121 is only proper when the case was brought frivolously, unreasonably, or without foundation. *Kelly v. Silverwood Estates*, 127 Idaho 624, 630, 903 P.2d 1321, 1327 (1995). This Court reviews the district court's decision under an abuse of discretion standard. *Id.* As to Hughes and HLS' requests for attorney fees,

the district court did not abuse its discretion by determining that NWBC and NWPI's claims were not brought unreasonably, frivolously, or without foundation.

### E. HLS and Hughes Are Entitled To Limited Attorney Fees On Appeal.

All of the parties have requested attorney fees on appeal. HLS and Hughes are entitled to attorney fees on appeal under I.C. § 12–121. However, the award of attorney fees is limited to those fees incurred in defending the appeal. Because NWBC and NWPI are not the prevailing parties, they are not entitled to recover under Paragraph 5 of the Confidential Nondisclosure Agreement.

### IV.

### CONCLUSION

This Court affirms the district court's grant of summary judgment in favor of HLS and Hughes. This case turned upon whether there was any misappropriation of NWBC and NWPI's trade secrets by Hughes or HLS. HLS and Hughes met their burden on summary judgment by providing the court with affidavits that established the absence of any genuine issues of material facts. Every affidavit denied the misappropriation of any trade secrets. The burden then shifted to NWBC and NWPI to create a genuine issue of material fact to survive summary judgment. NWBC and NWPI did not meet their burden on the issue of misappropriation, rendering the issues surrounding the Confidential Nondisclosure Agreement moot. Additionally, the appellants did not establish the elements of a tortious interference cause of action. The respondents' arguments regarding the award of attorney fees by the district court were not persuasive. Therefore, the decision of the district court is affirmed. Attorney fees as set out above and costs are awarded to respondents.

Chief Justice TROUT, Justices SCHROEDER, WALTERS, and EISMANN CONCUR.