James Jeffrey STEFANO,
Plaintiff—Appellant,

v.

MICRON TECHNOLOGY, INC., et al., Defendants—Appellees.

James Jeffrey Stefano, et al.,
Plaintiffs—Appellees,

v.

Micron Technology, Inc., et al.,
Defendants—Appellants.

Nos. 01–35983, 01–36051.
D.C. No. CV–99–00003–BLW.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 6, 2003.

Decided May 12, 2003.

Before REINHARDT, W. FLETCHER, and GOULD, Circuit Judges.

### MEMORANDUM*

Micron Technology, Inc. ("Micron") discharged James Stefano ("Stefano") for insubordinate conduct after he sent materials to a Micron Board Member that included criticisms of Micron's CEO. Stefano sued under Idaho law, alleging wrongful discharge and slander.[1] The district court granted summary judgment to Micron on the wrongful discharge claims. Stefano appeals the grants of summary judgment on three of his claims relating to his discharge. Micron cross-appeals, challenging the district court's decision that no attorneys' fees were due to Micron after it was awarded

summary judgment. We affirm, rejecting the positions advanced on both appeal and cross-appeal.

### I

Micron hired Stefano in 1986. His application stated that his employment could be "terminated at the will or election of Micron" and that Micron was "not expected to demonstrate just cause" if it discharged him. In 1992 Micron distributed a handbook that included a statement reaffirming Stefano's at-will employment status. The handbook also forbade "insubordination and disruptive conduct," which it defined as "discourteous ... or offensive conduct or language toward ... supervisors," including "circulating anonymous notes or letters."

According to Stefano, in March 1998 Micron Board Member Jerry Hess became concerned about the company's product yields, and Hess consulted with Tyler Lowrey, a former Micron Board Member, who advised Hess that the data indicated Micron was having production problems. Hess asked Lowrey to get current yield data from Micron insiders. Lowrey called a Micron technician who, in turn, asked Stefano and his colleague Nicholas Van Heel to fax Hess confidential records on Micron's production and efficiency. When Stefano faxed Hess the requested materials, Stefano included criticisms of Micron's management by another engineer, Aftab Ahmad, stating that the CEO lacked vision and was pursuing self-oriented objectives. Stefano later acknowledged that after sending the fax, he feared repercussions. Stefano sent the fax anonymously, but the

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. The slander claim was tried to a jury, which found that slander had occurred, but that no damages were due to Stefano because the challenged statements were not made with reckless disregard for the truth. No appeal on the slander claim is before us.

identities of Stefano, Van Heel, and Ahmad were discovered, and all three were discharged. Micron stated that Stefano was discharged for "unethical behavior, disclosing Micron's confidential information to outsiders and causing disruption."

Stefano and Van Heel sued Micron, Hess, Micron CEO Steven Appleton, and Micron Vice President Robert Donnelley, asserting claims including: (1) breach of oral contract; (2) breach of implied covenant of good faith and fair dealing; (3) wrongful discharge in violation of public policy; and (4) slander. Micron counterclaimed against Van Heel, alleging that he had violated certain terms in his employment contract.

After Stefano filed suit, *Idaho Statesman* reporter Marcie Edwards interviewed Micron counsel Rod Lewis and Micron spokesperson Julie Nash. Edwards published their statements the next day. In her deposition, Edwards testified that Lewis said that "Micron has an open-door policy that gives any Micron employee the right to give information to Micron directors," and that the policy allows employees to "take their concerns [to superiors] without fear of retaliation." Edwards said that Nash told her that "[Micron] directors had the right to request information from employees."

The district court granted summary judgment to Hess on all claims, and to Micron and the Micron officials on all claims except for Stefano's claim for slander.[2] While Stefano's case was pending, Van Heel and Micron settled and their claims against each other were dismissed, each side agreeing to bear its own costs. Stefano proceeded to trial on the slander claim. The jury found that Appleton had defamed Stefano, but that Stefano had not

proved that Appleton's statements were made with reckless disregard for the truth. Micron therefore had no liability for this claim.

Micron filed a petition seeking $948,027.81 for attorneys' fees pursuant to Idaho state law. The district court denied the petition, reasoning that Micron was entitled to fees on Stefano's wrongful termination claim, but that it was impossible to compute an award because the bills did not show how much time was spent on Stefano's claims, as contrasted with those of Van Heel, nor did the bills show how much time was spent on Stefano's wrongful termination claim, for which fees were due, as contrasted with his slander claim, for which fees were not due.

Stefano appeals the district court's grant of summary judgment to Micron on his claims of breach of contract, breach of implied covenant of good faith and fair dealing, and wrongful discharge in violation of public policy. He also requests attorneys' fees. Micron appeals the decision not to award any attorneys' fees to it after it prevailed on summary judgment.

**II**

■ Stefano argues that his at-will employment status was modified by Micron's "open-door policy," which encouraged employees to communicate any concern about Micron to their superiors, including the Board of Directors, without fear of retaliatory action. Stefano points to: (1) Lewis and Nash's statements that an employee could not be terminated for "giv[ing] information" to a board member or for expressing "concerns" to a superior; and (2) "daily conversations and interactions" with superiors showing that criticism was wel-

---

**2.** Stefano's slander claim was based on the accusation by Appleton that Stefano had disclosed confidential information to outsiders.

come. Stefano also argues that his at-will status was modified by Micron's actual practice of discharging employees only for cause. Finally, Stefano argues that because Hess is a Micron Board Member, a request by Hess for information implicitly carried a promise that Stefano would not be terminated for responding.

We begin with a fundamental premise of Idaho state law. Idaho law provides that "[u]nless an employee is hired pursuant to a contract which specifies the duration of the employment or limits the reasons for which an employee may be discharged, the employment is at the will of either party." *Sorenson v. Comm Tek, Inc.*, 118 Idaho 664, 799 P.2d 70, 72 (1990) (internal quotation marks and citations omitted). "A limitation may be implied if, from all the circumstances surrounding the employment relationship, a reasonable person could conclude that both parties intended that the employer's ... right to terminate the employment relationship-at-will had been limited by the implied-in-fact agreement of the parties." *Id.* (quoting *Metcalf v. Intermountain Gas Co.*, 116 Idaho 622, 778 P.2d 744, 746 (1989)).

*Metcalf* involved an employee who argued that because of a sick-leave benefit set out in the manual issued by her employer, her at-will status was modified by an agreement that she could not be terminated for extended use of that benefit where she did not exhaust the sick-leave time available to her. *Metcalf* held that the employee's at-will status was modified where the benefit was described in the handbook, the employee relied on it, and the benefit was part of the employee's compensation package.

The narrow exception to the at-will doctrine outlined in *Metcalf* has no application here. In Stefano's case, the employee handbooks issued by Micron were explicit about the at-will nature of his employment. Even if Micron did purport to embrace an "open-door policy," Stefano's furtive behavior suggests a lack of confidence about its existence. Nor, unlike in *Metcalf,* was the alleged policy an earned benefit accrued as the result of an employment contract. Even if we were to assume the existence of the "open-door policy," *Metcalf* does not support Stefano's claim that the at-will relationship had been impliedly modified.

Stefano urges that under Federal Rule of Evidence 801(d)(2)[3] Lewis and Nash's statements should be regarded as statements against interest because they are admissions that Micron modified his at-will status. They may be admissions against interest, but at most, they show that Micron had an "open-door policy." But such a policy did not bring Stefano within the *Metcalf* exception to at-will employment. The "open-door policy," which we credit for summary judgment purposes, did not modify Stefano's at-will status.

As for Stefano's argument that Micron's testimony showed that Micron had a practice of terminating only for cause, no Idaho court has held that such a practice modifies at-will employment to make it terminable only for cause. In *Atwood v. Western Construction, Inc.*, 129 Idaho 234, 923 P.2d 479, 485 (1996), the court said it would not "consider evidence that a company does not usually fire employees without a good reason as *by itself* establishing that the company does not maintain an at-will employment policy." (citation omitted) (emphasis in original). *Atwood* does not help Stefano. He fails to point out any relevant considerations *other than* the alleged practice, and *Atwood* makes it plain that this

**3.** That rule provides that "[a] statement is not hearsay if ... [t]he statement is offered against a party and is ... the party's own statement."

factor alone does not modify an employee's at-will status.

Finally, Stefano argues that Hess's request carried an implicit promise that Stefano could not be discharged for responding to the request. But Hess did not request the kind of critical commentary that was supplied along with the statistical data, and so any implied promise did not reasonably extend to Stefano's actions here.

There was no error in the grant of summary judgment to Micron on the claim for breach of contract. We hold that even if Micron had an "open-door policy," and even if Stefano's conduct in part could be viewed as the kind of conduct the policy was meant to encourage, Stefano's claim for breach of contract must fail, because Micron did not modify Stefano's at-will employment status, and because Stefano's circulation of comments critical of the CEO went beyond what had been requested.

### III

■ Stefano appeals the district court's grant of summary judgment to Micron on the claim for breach of implied covenant of good faith and fair dealing ("implied covenant"). First, Stefano argues that the discharge was a result of bad faith. Second, Stefano says he was promised that Micron would maintain an "open-door policy," and that that promise was a benefit due to him under the implied covenant.

Both arguments fail under Idaho law. First, *Metcalf* "reject[ed] the amorphous concept of 'bad faith' as the standard for determining whether the covenant [of good faith and fair dealing] has been breached." *Metcalf*, 778 P.2d at 749. Second, in explaining what "benefits" are protected by the implied covenant, *Metcalf* stated that "[t]he covenant does protect an employee from a discharge based on an employer's desire to avoid the payment of benefits already earned by the employee, such as ... sales commissions ... but not the tenure to earn ... pension and retirement benefits." *Id.* (emphasis altered). Even if Micron did not fulfil its promise to maintain an "open-door policy," Stefano had no basis for a claim of breach of the implied covenant, because the "open-door policy" did not involve a benefit that was "earned by the employee." There was no error in the district court's grant of summary judgment to Micron on Stefano's claim of breach of implied covenant.

### IV

■ Stefano appeals the district court's grant of summary judgment to Micron on his claim alleging wrongful discharge in violation of public policy. Under Idaho law, "[a]n employee at will may not ... be discharged for a reason contravening public policy." *Watson v. Idaho Falls Consol. Hosp.*, 111 Idaho 44, 720 P.2d 632, 635 (1986). Stefano argues that Idaho law gives a director of a corporation free access to information from employees, and that public policy dictates that an employee cannot be discharged for complying with a request for such information. Stefano also argues that as a Micron shareholder himself, he had a right to ensure that his property was well managed.

Stefano's case does not fall within any proper exception. He offered critical commentary that went beyond merely providing information and ensuring that his property was well managed. Stefano's transmittal of Ahmad's hostile commentary was not responsive to Hess's request. Micron's decision to discharge Stefano for providing such hostile commentary did not violate public policy.

### V

Because there was no error in the district court's grant of summary judgment to

Micron, we deny Stefano's request for attorneys' fees pursuant to Idaho Code § 12–120(3).[4]

## VI

■ Micron appeals the district court's determination that no attorneys' fees were due to Micron, pursuant to the same provision of the Idaho Code. The district court explained that Micron was not entitled to fees on the slander claim, because the jury found that Appleton had slandered Stefano, but not recklessly. The court also noted that when Micron and Van Heel settled, each side was to bear its own costs; therefore Micron was not entitled to fees related to Van Heel. Thus Micron was entitled only to fees for prevailing on Stefano's wrongful termination claims, and the court said that "since neither firm representing Micron broke out the fees they incurred ... the court would be forced to speculate about those sums."[5] The court concluded that "[u]nder these circumstances an award of fees is not warranted."

Attorneys' fee awards are reviewed for abuse of discretion. *Hemmings v. Tidyman's, Inc.*, 285 F.3d 1174, 1200 (9th Cir. 2002). Micron argues that if the available information was insufficient to allow for an accurate computation, the district court should have "requested [more] information ... or simply reduced the fee to a reasonable amount." *Fischer v. SJB–P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir.2000). In *Fischer* the court said it appeared that "more detailed records were readily available." *Id.* Here, it appears that the court already received the most detailed records

available, and those records did not allow the court to segregate fees. *Fischer* does not apply in such a case. The district court was within its discretion when it properly declined to speculate, and any further submission in this case would not have cured that problem. *See San Francisco Culinary, Bartenders & Serv. Employees Welfare Fund v. Lucin*, 76 F.3d 295, 299 (9th Cir.1996) (holding that fees could not be awarded where they were not segregable from fees not due, because "[i]f it is not possible ... to segregate the costs, then no award of attorneys' fees can be made."). Here, the district court has already determined it is not possible to segregate the fees that related to the claims on which Micron prevailed. The district court's decision to award no fees was not an abuse of discretion.

**AFFIRMED.**

---

4. That statute provides that "[i]n any civil action to recover on ... [a] contract relating to the purchase or sale of ... services ... the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs."

5. Micron's documentation of the attorneys' fees occupies 262 pages in the record. These documents do not allow for identification of expenses relevant only to Van Heel (e.g., depositions of Van Heel or of witnesses relevant only to his case), or of expenses incurred for Stefano's libel claim.