137 P.3d 435

**THIRSTY'S L.L.C., an Idaho limited liability company, Plaintiff–Appellant,**

v.

**Gary E. TOLERICO and Joan McMann Tolerico, husband and wife, Defendants,**

and

**Thunderbird Lubrications, a foreign entity, Defendant–Respondent.**

No. 31743.

Supreme Court of Idaho, Boise, April 2006 Term.

May 26, 2006.

John F. Magnuson, Coeur d'Alene, for appellant.

Winston & Cashatt, Spokane, Washington, for respondent. Stephen L. Farnell argued.

TROUT, Justice.

Appellant Thirsty's, LLC (Thirsty's) appeals from a district court decision granting summary judgment in favor of Respondent Thunderbird Lubrications (Thunderbird), dismissing Thirsty's cause of action against Thunderbird for tortious interference with a contract.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Thirsty's owned two gas stations that were originally operated as Shell stations, which required the stations to display Shell's signage and sell its oil products. While under contract with Shell to supply petroleum products for both stations, Thirsty's decided to rebrand the stations from Shell to Tesoro. Thirsty's entered into motor fuel supply contracts and Amortization Agreements (Agreements) for both stations with a jobber, R.E. Powell Distributing Company (Powell), an intermediary representing Tesoro. The motor fuel supply contracts required Thirsty's to purchase all of its motor fuels through Tesoro and use Tesoro exclusively as its dealer. In the Agreements, Thirsty's accepted money from Tesoro, through the jobber, to convert the gas station's signs, pumps and equipment to the Tesoro brand. The Agreements amortized over a ten year period repayment to Tesoro for the money it advanced to convert the stations.

While still obligated under the motor fuel supply contracts and Agreements with Powell, Thirsty's sold the two gas stations to the Defendants Gary and Joan Tolerico (the Tolericos). Pursuant to the Contract of Sale, the Tolericos assumed Thirsty's debt obligations to Powell under the Agreements. However, for reasons that are not clear in the record, it appears that the Tolericos never entered into any written agreement with Powell or Tesoro to purchase motor fuels from Tesoro. Nevertheless, for approximately a year after purchasing the gas stations, the Tolericos continued to sell Tesoro

products. The Tolericos, however, were not satisfied with this arrangement because they believed Tesoro and Thirsty's were claiming the Tolericos owed more money to Tesoro than originally agreed. For that reason, the Tolericos contacted Thunderbird, another fuel jobber like Powell, and expressed an interest in purchasing fuel and rebranding the stations from Tesoro to Conoco.

During negotiations with Thunderbird, Thunderbird inquired if the Tolericos had entered into any motor fuel supply contract with Tesoro or Powell. Although the Tolericos informed Thunderbird they did not enter into any motor fuel supply contract, they did provide Thunderbird with copies of the Contract of Sale for the gas stations and copies of the Agreements they had assumed. Thus, Thunderbird was aware of the Tolerico's amortized obligations to Powell.

Ultimately, the Tolericos entered into new amortization *and* fuel supply agreements with Thunderbird for both stations to rebrand the two stations to Conoco and supply Conoco fuel products. At that point, Powell deemed the Agreements to be in default and filed suit against both Thirsty's and the Tolericos in Washington to recover the amounts due under the Agreements. The Washington action is still pending. Thereafter, Thirsty's brought the current action against the Tolericos and Thunderbird, arguing Thunderbird had committed tortious interference with a contract by interfering with the obligation the Tolericos owed to Powell to repay the debt assumed under the Agreements or under the motor fuel supply contracts.

The district judge granted Thunderbird's summary judgment motion to dismiss on the basis there were no genuine issues of material fact and no facts to support the conclusion that Thunderbird caused the Tolericos to fail to satisfy their assumed debt obligations. Thirsty's now appeals the grant of summary judgment in favor of Thunderbird.

## II.

## STANDARD OF REVIEW

"In an appeal from an order of summary judgment, this Court's standard of

review is the same as the standard used by the trial court in ruling on a motion for summary judgment." *Infanger v. City of Salmon,* 137 Idaho 45, 47, 44 P.3d 1100, 1102 (2002). In reviewing a grant of summary judgment, the "Supreme Court must liberally construe the facts in favor of the non-moving party and determine whether there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law." *Hindmarsh v. Mock,* 138 Idaho 92, 57 P.3d 803 (2002).

## III.

## ANALYSIS

### 1. Tortious interference with a contract

A prima facie case of tortious interference with a contract exists where a plaintiff establishes: (a) the existence of a contract, (b) knowledge of the contract on part of the defendant, (c) intentional interference causing breach of the contract and (d) injury to the plaintiff resulting from the breach. *Barlow v. Int'l Harvester Co.,* 95 Idaho 881, 893, 522 P.2d 1102, 1115 (1974). The problem with Thirsty's cause of action and argument is that both the district court below and this Court on appeal have had difficulty identifying with exactly which contractual relationship Thirsty's is claiming interference.

At oral argument, Thirsty's attorney argued that the Tolericos either expressly, or at least impliedly, assumed the motor fuel supply contracts between Thirsty's and Powell when they purchased the gas stations and that Thunderbird tortiously interfered with those contracts. The record reveals no evidence of an express assumption by the Tolericos of the motor fuel supply contracts between Thirsty's and Powell. Thunderbird was aware there was no express agreement for the purchase of fuel from Tesoro and therefore, clearly did not interfere with such a contract.

Regarding the Tolericos implied assumption of the contract, it is Thirsty's obligation to present sufficient evidence to create a genuine issue of fact that the Tolericos had some implied agreement to purchase Tesoro products. The only facts Thirsty's points to are that on one occasion, the Tolericos acknowledged Powell *thought* they had agreed to purchase motor products from Tesoro and, indeed, the Tolericos did so for approximately a year. These facts alone, however, do not raise a genuine issue of material fact that would support Thirsty's contention that the Tolericos were under some implied obligation to purchase motor fuel from Tesoro. Again, there is no contract with which Thunderbird could interfere.

Thirsty's also appears to argue the Agreements have been breached by virtue of the Tolerico's agreement to sell Conoco products and that Thunderbird has some responsibility for that. Because Thirsty's is still obligated on the Agreements with Powell and Tesoro, Thirsty's may face some liability and is obviously concerned about holding someone accountable. It is clear that the Tolericos agreed to assume the amortized debts owed by Thirsty's to Powell under the Agreements. By the terms of the Agreements, however, they only came due if an "event of default" occurred. The Agreements are for a ten year term and payments due Powell are amortized over the entire ten year period, with the amount owed decreasing over the life of the Agreements. If the Agreements are fully complied with, no amounts ever become due and payable at the conclusion of ten years. However, if an "event of default" occurs, the Agreements become immediately due and payable. An "event of default" is defined by the Agreements as including the failure to sell exclusively Tesoro fuel products. Thus, when the Tolericos began selling Conoco fuel, the remaining balances owed under the Agreements became immediately due. Although Thunderbird was a facilitating factor in causing the amortized debt to become due, nothing Thunderbird did prevented the Tolericos from honoring any obligations under the Agreements with Powell and paying back the amortized debt. The decision not to pay Powell was entirely within the Tolericos' control and had nothing to do with Thunderbird. Thunderbird did not intentionally interfere with whatever contractual obligation the Tolericos have under the Agreements—it simply participated in making those obligations due.

Therefore, we conclude the district court was correct that there was no genuine issue of material fact and, as a matter of law, Thunderbird did not intentionally interfere with any contractual agreement between Thirsty's or Tolericos and Powell.

### 2. Attorney fees

Both parties request attorney fees on appeal pursuant to I.C. § 12–120(3). I.C. § 12–120(3) mandates an award of attorney fees in any civil action to recover on a "contract relating to the purchase or sale of goods, wares, merchandise, or services and in any commercial transaction . . . ." Tortious interference with a contract is not an action to recover on a contract, nor a commercial transaction, but rather an action in tort. Thus, a prevailing party on a claim for tortious interference is not entitled to attorney fees under I.C. § 12–120(3). *Northwest Bec–Co. v. Home Living Ser.,* 136 Idaho 835, 41 P.3d 263 (2002).

## IV.

### CONCLUSION

We affirm the district court's decision granting summary judgment and award costs on appeal to Thunderbird.

Chief Justice SCHROEDER and Justices EISMANN, BURDICK and JONES concur.