59 P.3d 302

Tim WILLIE, Plaintiff–Appellant,

v.

BOARD OF TRUSTEES, Oneida School District No. 351; Lynn Schow, in his official capacity as Superintendent of Oneida School District No. 351, Defendants–Respondents.

No. 27384.

Supreme Court of Idaho,
Pocatello, September 2002 Term.

Nov. 13, 2002.

John E. Rumel, Boise, for appellant.

Anderson, Julian & Hull, Boise, for respondents. Brian K. Julian argued.

KIDWELL, Justice.

Appeal by Tim Willie, a high school teacher, from a grant of summary judgment in favor of Oneida School District on his claims for breach of employment contract, violation of public policy, and violation of constitutional rights including freedom of speech and association. The judgment of the district court is affirmed.

## I.

## FACTS AND PROCEDURAL BACKGROUND

The Oneida School District (District) hired Tim Willie (Willie) as a teacher for the 1996–97 school year. Willie was certified to teach Business Education 6/12, Vocational Business Education, Marketing Ed 6/12, Vocational Marketing 6/12, Social Studies 6/12, and to serve as a Work Based Learning Coordinator. Willie's duties included supervising a newly created Alternative School Program and coaching the high school football team.

The District renewed Willie's contract for the 1997–98 and 1998–99 school years. The contract stated:

> It is understood and agreed between the parties that this contract is subject to the applicable laws of the State of Idaho, the duly adopted rules of the State Board of Education and the policies of the District which are, by reference, incorporated herein and made a part of this agreement the same as if fully set forth herein.

Willie's contract incorporated a Reduction In Force (RIF) policy the Board adopted in the early 1980's. The policy provided a procedure in the event that the District needed to reduce its work force. The RIF policy stated, in relevant part: "When, in the judgement [sic] of the Board of Trustees, a decline in enrollment, a reduction of program, a loss of revenue, or any other reason requires a reduction in staff, the administration shall attempt to accomplish the same by attrition...." The policy then explains in detail that a reduction in force will proceed on a seniority basis if not accomplished by attrition.

During its February 24, 1999 meeting, the Board, at the recommendation of District administrators, eliminated the Alternative School Program in favor of hiring an additional science teacher. District administrators were seeking a new science teacher in response to parent complaints that the high school did not offer a sufficient curriculum to prepare students for college. Willie was not certified, and therefore not qualified, to teach science. The Board unanimously decided not to renew Willie's teaching contract for a fourth year at the same meeting. The Board made no decision regarding Willie's status as football coach at that time.

In a letter dated March 1, 1999, the District's superintendent, Lynn Schow (Schow), informed Willie of the Board's decision to close the Alternative School Program and not

to renew his contract. In the same letter, Schow notified Willie of his right to request an informal review. The letter stated the decision not to renew Willie's contract resulted from the change in curriculum and was not related to unsatisfactory performance. Willie requested an informal review in a letter dated March 16, 1999. The Board affirmed its previous decision at the informal review. In a letter dated June 23, 1999, the Board informed Willie that its decision not to renew his teaching contract also included non-renewal of his contract as head football coach.

On June 21, 1999, Willie filed a complaint in which he sought a temporary restraining order, preliminary injunction, and damages. Willie amended his complaint on August 4, 1999, and again on June 1, 2000. The District and Schow moved for summary judgment on October 30, 2000. On January 2, 2001, the district court heard the motion and on January 22, 2001, it issued an order granting summary judgment in favor of the District and Schow. Willie now appeals from the district court's order granting summary judgment.

## II.

### STANDARD OF REVIEW

This Court has formulated the standard of review for summary judgment as:

Summary judgment is proper if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter .of law. When reviewing an appeal from a grant of summary judgment, this Court employs the same standard used by the district court originally ruling on the motion ... ascertain[ing] whether any genuine issues of material fact exist, and whether the moving party is entitled to summary judgment as a matter of law ..., this Court should liberally construe all facts in favor of the nonmoving party and draw all reasonable inferences from the facts in favor of the nonmoving party. Summary judgment must be denied if reasonable

persons could reach differing conclusions or draw conflicting inferences from the evidence presented. If the moving party challenges an element of the nonmoving party's case on the basis that no genuine issue of material fact exists, the burden then shifts to the nonmoving party to present evidence that is sufficient to establish a genuine issue of material fact ... [t]he nonmoving party must submit more than just conclusory assertions that an issue of material fact exists to establish a genuine issue.

*Northwest Bec Corp v. Home Living Servs.,* 136 Idaho 835, 838–39, 41 P.3d 263, 266–67 (2002) (internal citations and quotations omitted).

■ Regarding constitutional issues, this Court decides whether the facts in the record demonstrate a violation of the claimant's constitutional rights independently of the district court. *Bradbury v. Idaho Judicial Council,* 136 Idaho 63, 67–68, 28 P.3d 1006, 1010–11 (2001).

## III.

### ANALYSIS

A. **The District Court Did Not Err In Granting Summary Judgment.**

1. **There Is No Genuine Issue Of Material Fact Regarding Willie's Breach Of Contract Claim.**

■ Willie argues the District's RIF policy is ambiguous and the District breached Willie's contract by failing to apply the RIF policy when deciding not to renew his contract. The District argues the RIF policy does not apply to Willie because it is unambiguous and applies only when there is a "reduction in force" and there was no reduction in force, i.e., the District did not reduce the total number of teachers it employs.

The RIF policy became part of Willie's contract and, if triggered, would apply to actions affecting him. The RIF policy states in relevant part: "[w]hen, in the judgement [sic] of the Board of Trustees, a decline in enrollment, a reduction of program, a loss of revenue, or any other reason requires a re-

duction in staff, the administration shall attempt to accomplish the same by attrition." The policy also explains that in the event attrition is not sufficient to accomplish a reduction in force, then layoffs will occur on a seniority basis. The plain and unambiguous language of the RIF policy makes it clear that it applies only when there is a "reduction in force," i.e., when the District reduces the total number of staff (teachers in this case) it employs.

Willie's argument that the term "reduction in staff" is ambiguous because reasonable minds could differ over whether it refers to an overall reduction of staff or, as in his case, the loss of one staff member due to elimination of a program, is strained. The RIF policy clearly refers to an overall or aggregate reduction in staff, not to a single occasion of non-renewal and replacement.

The facts show there was no reduction in force; rather, one teacher replaced another. Therefore, this Court finds that the RIF policy is unambiguous and did not apply to the District's decision not to renew Willie's contract. As a consequence, the District did not breach its contract with Willie.

### 2. There Is No Genuine Issue Of Material Fact Regarding Willie's Claims Based On Violation Of Public Policy, The Idaho Constitution, or 42 U.S.C. § 1983.

■ Willie claims his participation in the union, which is protected association and speech activity, is the reason the District decided not to renew his contract. Willie also asserts that the District's actions violate Idaho public policy, the Idaho Constitution, and 42 U.S.C. § 1983. The District counters that Willie's union participation played no role in its decision not to renew his contract and that the decision was based solely on a change in curriculum.

Willie must produce some evidence that the District's decision not to renew his teaching contract was based on his union participation in order to withstand summary judgment on his claims for violation of public policy,[1] the Idaho Constitution, and 42 U.S.C. § 1983. *See Crea v. FMC Corp.,* 135 Idaho 175, 178, 16 P.3d 272, 275 (2000) (discussing public policy and employment at will); *Plumeau v. School District # 40 County of Yamhill,* 130 F.3d 432, 438 (9th Cir.1997); 42 U.S.C. § 1983 (1994); *Aberdeen Springfield Canal Co. v. Peiper,* 133 Idaho 82, 92, 982 P.2d 917, 927 (1999); *DeMoss v. City of Coeur d'Alene,* 118 Idaho 176, 179–80, 795 P.2d 875, 878–79 (1990) (discussing requirements necessary to prove a violation of 42 U.S.C. § 1983).

Willie argues that the following points create a genuine issue of material fact on the issue of whether the District's decision to not renew his contract was based on his union activity: (1) the District and Schow knew they would be forced to negotiate with him as a newly elected union officer; (2) after deciding not to renew his contract, the District informed the union Willie could not serve as a negotiator because he was no longer an employee; (3) the District informed him his contract to coach the football team would not be renewed the day after it was served with his complaint; (4) Schow refused to implement the suggestions of Willie's wife in order to rehire him; (5) the District made efforts to find a position for other employees not considered union leaders; (6) after Willie's contract was not renewed, the District actu-

---

1. This Court has established that public policy may limit the right of an employer to discharge an at will employee. *Crea v. FMC Corp.,* 135 Idaho 175, 178, 16 P.3d 272, 275 (2000). One limitation this Court has recognized is that an employee cannot be terminated for union activities. *Roberts v. Board of Trustees, Pocatello School District,* 134 Idaho 890, 893, 11 P.3d 1108, 1111 (2000). The issue of whether the public policy exception of at will employment extends to an annual contract teacher in the case of non-renewal is undecided in Idaho. However, this Court has determined an annual contract teacher has no expectation of continued employ-

ment, his or her contract is annual and there is no right to renewal. *Kingsbury v. Genesee School District,* 132 Idaho 791, 794, 979 P.2d 1149, 1152 (1999); *Smith v. Meridian Joint School Dist.,* 128 Idaho 714, 720, 918 P.2d 583, 589 (1996). The Court need not decide the issue of whether the public policy exception applies to an annual contract teacher in the case of non-renewal of a contract or whether Willie's Idaho Constitution claim is cognizable because Willie fails to create a genuine issue of material fact regarding whether his contract was not renewed on the basis of his union activities.

ally reduced its number of science teachers; and (7) there is a discrepancy over who first suggested closing the Alternative School, Schow or Principal Pantelone.

Willie asserts his experience as a Board member created apprehension in the respondents due to his familiarity with budget and financial issues. However, Willie's knowledge as a Board member was garnered almost 20 years earlier. The District denies, and the facts fail to support, any contention that the District acted due to any uneasiness over the prospect of negotiating a new contract with Willie as a union representative.

The District did inform the union it refused to negotiate if Willie remained on the union's team after the Board's decision not to renew his contract. However, the reason offered for doing so was based on the fact that the District and the union have procedures in place that only allow teachers who will be working under the new contract to be involved in negotiations. Insistence on adhering to agreed upon procedures and a desire to negotiate only with teachers who would actually be working under the contract at issue is logical and does not suggest the District acted for any other reason.

The fact that the District notified Willie that the non-renewal of his teaching contract also included non-renewal of his coaching contract the day after being served his complaint also fails to create a genuine issue of fact. The inferences in the record do suggest the District initially intended to keep Willie on as the head football coach. During the summer after Willie's contract was not renewed, it became apparent to Principal Pantelone and the District that Willie was not preparing the football team for the upcoming season. After Principal Pantelone and the school's athletic director visited Willie during the summer, they felt Willie had a negative attitude toward coaching and had no intention of doing anything further with the football team over the summer. That meeting led to the decision to not retain Willie as the football coach. The fact that the District's letter stated the decision in February to not renew his teaching contract included the decision to not renew his coaching contract is not significant. Inferences in the

record suggest nothing more than coincidence as to the timing of the arrival of the letter to Willie.

Willie argues that Schow refused to implement any of Willie's wife's suggestions, which would have allowed the district to hire a new science teacher and keep Willie as a teacher. Willie offers no evidence as to what these suggestions were, if they were viable, or that there was a logical connection between Schow's refusal to implement the suggestions and the Board's decision not to renew Willie's contract.

Willie refers to a scenario that occurred ten years ago to prove the District made efforts to find a position for employees not considered union leaders. When a principal/teacher contracted cancer, the District retained him as a payroll consultant while he recovered and hired Willie's sister-in-law to replace him as a teacher. When the principal/teacher returned the next year, Willie's sister-in-law was let go by the District, but she was re-hired by the District the following year. This scenario, which occurred ten years ago, has nothing to do with the District's current actions and fails to suggest the District is willing to find teaching jobs for non-union leaders but not union leaders. Willie fails to point to any other instances where the District took adverse actions against any other union leader.

Willie points to the fact that the number of science teachers in the District actually decreased in the school years after his non-renewal to support his allegations. However, this contention mischaracterizes the facts. While the District did hire an additional science teacher for the 1999–2000 school year, the number of science teachers in the district did diminish the next year. The science teachers who left the District did so on their own volition and for logical reasons unrelated to any actions taken by the District. The fact that these science teachers left the District has no bearing on Willie's allegations.

Willie's claim that there is a discrepancy over who first suggested closing the Alternative School, Schow or Principal Pantelone, is confusing and has no impact on the issue of whether the District took action based on his

union participation. In his deposition, Schow did testify that the principal first suggested closing the Alternative School in the fall of 1998. Willie then claims Principal Pantelone testified that Schow first suggested closing the Alternative School to Principal Pantelone and only did so after the Board's February 1999 decision to close the Alternative School. However, Principal Pantelone was never questioned regarding who first suggested closing the Alternative School; he was only questioned regarding the options Schow gave him after he requested the school improve its science curriculum, which was to either retain the Alternative school or hire a new science teacher. Willie would have this Court believe Principal Pantelone was so incompetent that he had no idea what was going on in his own school. Further, the affidavits of school board members indicate Principal Pantelone was fully aware of the possibility of closing the Alternative School and suggested doing so at Board meetings in the Fall of 1998 and early 1999.

Considered together, the facts Willie argues to create a genuine issue of material fact, drawing all inferences in his favor, fail to create any logical connection between non-renewal of his contract and his union activity. Therefore, this Court finds that the district court properly granted summary judgment in favor of the District and Schow on Willie's claims of a violation of public policy, right to freedom of association and speech under the Idaho Constitution, and 42 U.S.C. § 1983.

**B. Respondents Are Entitled To An Award Of Costs And Attorney Fees Under Idaho Code § 12–120(3) To The Extent The Attorney Fees Relate To Defense Of Willie's Claim For Breach Of Contract; Respondents Are Not Entitled To Attorney Fees For Defense of Willie's Public Policy, Constitutional, or 42 U.S.C. § 1983 Claims.**

■■■■ A party may prevail in whole or in part when more than one issue is raised in the complaint. *Int'l Eng'g Co., Inc. v. Daum Indus.*, 102 Idaho 363, 366, 630 P.2d 155, 158 (1981). Under I.C. § 12–120(3), the prevailing party in a civil action involving a commercial transaction based on a contract is entitled to an award of reasonable attorney fees. IDAHO CODE § 12–120(3) (1998). The test for whether a commercial transaction is involved in a claim is whether the commercial transaction is the gravamen of the claim. *Brower v. E.I. DuPont De Nemours & Co.,* 117 Idaho 780, 784, 792 P.2d 345, 349 (1990). Actions brought for breach of an employment contract are considered commercial transactions and are subject to the attorney fee provision of I.C. § 12–120(3). *Northwest Bec Corp,* 136 Idaho at 842, 41 P.3d at 270; *Treasure Valley Gastroenterology Specialists, P.A. v. Woods,* 135 Idaho 485, 492, 20 P.3d 21, 28 (Ct.App.2001).

■■■■ This Court has held attorney fees under § 12–120(3) are unavailable when the claim is based on a statutory provision. *Shay v. Cesler,* 132 Idaho 585, 587–89, 977 P.2d 199, 201–03 (1999). However, attorney fees are unavailable under § 12–120(3) for statutory claims only when the statute upon which the claim is brought includes its own attorney fees provision. *Id.* When various statutory and common law claims are separable, a court should bifurcate the claims and award fees pursuant to § 12–120(3) only on the commercial transaction. *See Brooks v. Gigray Ranches Inc.,* 128 Idaho 72, 77–79, 910 P.2d 744, 749–51 (1996); *Atwood v. Western Const., Inc.,* 129 Idaho 234, 241, 923 P.2d 479, 486 (Ct.App.1996).

■■■■ The District and Schow are the prevailing party because they have received all relief sought in their answer. As a result, the District and Schow are entitled to fees related to defense of Willie's claim for breach of contract, which constitutes a commercial transaction under I.C. 12–120(3). The District and Schow are not entitled to fees related to Willie's public policy and Idaho Constitution claims because they are specifically exempted from I.C. § 12–120(3). Further, because attorney fees for § 1983 claims are available under 42 U.S.C. § 1988, the District and Schow are not entitled to fees related to defense of that statutory claim as well.

## IV.

## CONCLUSION

The district court did not err in determining the Reduction In Force policy is not

ambiguous and does not apply to the school District's decision to not renew Willie's teaching contract for a fourth year. As a result, the District did not breach its contract with Willie. Additionally, the district court did not err in determining Willie failed to create a genuine issue of material fact. Finally, the District is entitled to an award of costs and reasonable attorney fees under § 12–120(3), but only to the extent the fees relate to defense of the breach of contract claim.

Chief Justice TROUT and Justices SCHROEDER, WALTERS, and EISMANN, concur.