# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 37563-2010

| | | |
|---|---|---|
| HABIB SADID, an individual, | ) | Twin Falls, November 2011 Term |
| Plaintiff-Appellant-Cross Respondent, | ) ) | 2011 Opinion No. 125 |
| v. | ) ) | Filed: November 30, 2011 |
| IDAHO STATE UNIVERSITY, ROBERT WHARTON, JACK KUNZE, MICHAEL JAY LINEBERRY, MANOOCHEHR AOGHI, RICHARD JACOBSEN, GARY OLSON, AUTHUR VAILAS, and JOHN AND JANE DOES I through X., whose true identities are presently unknown, | ) ) ) ) ) ) ) | Stephen W. Kenyon, Clerk |
| Defendants-Respondents-Cross Appellants. | ) ) ) | |

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, in and for Bannock County. The Hon. David C. Nye, District Judge.

The judgment of the district court is <u>affirmed</u> <u>in</u> <u>part</u> and <u>vacated</u> <u>in</u> <u>part</u>.

Ronaldo A. Coulter; Camacho Mendoza Coulter Law Group, PLLC; Eagle; argued for appellant.

John A. Bailey, Jr.; Racine, Olson, Nye, Budge & Bailey Chtd.; Pocatello; argued for respondents.

---

EISMANN, Justice.

This is an appeal from a summary judgment dismissing a complaint by an engineering professor who alleged that Idaho State University had retaliated against him because of his comments criticizing the administration that had been published in a local newspaper over several years and that the University had breached his employment contract. We affirm the summary judgment, but remand for determination of reasonable attorney fees on the breach of contract claim.

# I.

## Factual Background

Habib Sadid ("Plaintiff") was a tenured professor in the Department of Civil Engineering at Idaho State University. He began working for the University in 1991, was given full tenure in 1993, and became a full professor in 1999. During the period from 2001 through 2008, Plaintiff publically criticized successive University administrations in guest columns, printed comments, a letter to the editor, and a paid advertisement, all of which were published in a local newspaper.

On September 29, 2008, Plaintiff filed this action against the University and a University administrator alleging that they retaliated against him for exercising his free speech rights, that the University breached his employment contract, and that the administrator defamed him. He later amended his complaint to add as defendants the former and current Provosts, the former and current Deans of the College of Engineering, the current Chair of the Department of Civil and Environmental Engineering, and the current University President.

The Defendants moved for summary judgment on various grounds, and the district court granted their motion. Plaintiff filed a motion for reconsideration, which the court denied. The court awarded the Defendants court costs as a matter of right, but denied their request for an award of attorney fees. Plaintiff appealed the granting of summary judgment, and the Defendants cross-appealed the denial of their request for attorney fees.

# II.

## Applicable Standards

When reviewing on appeal the granting of a motion for summary judgment, we apply the same standard used by the trial court in ruling on the motion. *Infanger v. City of Salmon*, 137 Idaho 45, 46–47, 44 P.3d 1100, 1101–02 (2002). We construe all disputed facts, and draw all reasonable inferences from the record, in favor of the non-moving party. *Id*. at 47, 44 P.3d at 1102. Summary judgment is appropriate only if the evidence in the record and any admissions show that there is no genuine issue of any material fact regarding the issues raised in the pleadings and that the moving party is entitled to judgment as a matter of law. *Id*.

Plaintiff seeks damages under 42 U.S.C. § 1983 on the ground that Defendants violated his freedom of speech guaranteed by the First and Fourteenth Amendments to the Constitution of

2

the United States. Determining whether a public employer infringed upon its employee's constitutionally protected interest in freedom of expression requires the following analysis:

(a) Did the plaintiff make the statements at issue pursuant to his or her official duties as a public employee? *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). If so, the speech is not protected from employer discipline. *Id.*

(b) If not, does the court conclude, as a matter of law, that any of the plaintiff's speech addressed a matter of public concern, considering the content, form, and context of the statement(s) as revealed by the whole record? *Connick v. Myers*, 461 U.S. 138, 147-48 & n.7 (1983). If none of the speech at issue addressed a matter of public concern, the speech was not protected from employer discipline. *Id.*

(c) If any of the speech did address a matter of public concern, has the plaintiff produced evidence from which the trier of fact could reasonably find that such speech was a substantial or motivating factor in adverse employment action? *Id.* at 149; *Brown v. City of Pocatello*, 148 Idaho 802, 806, 229 P.3d 1164, 1168 (2010). If not, the plaintiff has no First Amendment cause of action based upon his or her employer's reaction to the speech. *Connick*, 461 U.S. at 146.

(d) If so, does the court conclude that the employer has shown adequate justification for the action taken because its interest in the effective and efficient fulfillment of its responsibilities to the public, including promoting efficiency and integrity in the discharge of official duties and in maintaining proper discipline in public service, outweighed the employee's First Amendment right, considering factors such as how substantially the speech involved matters of public concern; the manner, time, and place where the speech occurred; and the context in which it arose, giving a wide degree of deference to the employer's judgment? *Id.* at 150-54. If the court so concludes, then the employer's action did not offend the First Amendment. *Id.* at 154.

(e) If the court cannot so conclude, has the employer shown by a preponderance of the evidence that it would have taken the same adverse employment action even in the absence of the protected speech? *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 286 (1977).

**III.**

3

**Did the District Court Err in Holding that Plaintiff's Statements**

**Were Not Protected Because He Spoke as a Public Employee?**

Plaintiff alleged that the Defendants violated his rights of freedom of speech. When he made the statements at issue, Plaintiff was a public employee. The district court characterized the issue as whether he "spoke as Public Employee or Private Citizen," and concluded that his speech was not protected because he spoke as a public employee.

"When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). "[T]he State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *Pickering v. Bd. of Ed. of Township High School Dist. 205, Will County, Illinois,* 391 U.S. 563, 568 (1968). "A government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations." *Garcetti*, 547 U.S. at 418.

When a public employee alleges retaliation for exercising his or her freedom of speech, the first issue is determining whether the employee was speaking as a citizen or pursuant to his or her official duties. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id*. at 421. Conversely, "[e]mployees who make public statements outside the course of performing their official duties retain some possibility of First Amendment protection because that is the kind of activity engaged in by citizens who do not work for the government." *Id*. at 423. Thus, the issue is whether Plaintiff's statements at issue were made in the course of performing his official duties.

Defendants contend that Plaintiff's speech was in performance of his duties, as shown by the allegation in his amended complaint stating that he made the public comments at issue "[i]n his capacity as a Faculty Member and Full Professor of ISU." Plaintiff made that same allegation in his original complaint, and the two Defendants named in the original complaint admitted the allegation in their answer. Plaintiff was later granted permission to file an amended complaint naming additional defendants. Plaintiff's amended complaint superseded the original complaint, and all subsequent proceedings had to be based upon the amended complaint.

4

*Weinstein v. Prudential Property and Cas. Ins. Co.*, 149 Idaho 299, 330, 233 P.3d 1221, 1252 (2010). Although "[t]here is no genuine issue of material fact as to issues admitted by the parties in their pleadings," *Esser Elec. v. Lost River Ballistics Technologies, Inc.*, 145 Idaho 912, 919, 188 P.3d 854, 861 (2008), the Defendants did not file an answer to Plaintiff's amended complaint, which was unverified. Because the allegation was unsworn and was not admitted by the Defendants, we need not decide whether it should be construed as alleging that Plaintiff's statements at issue were made in the course of performing his official duties. The party moving for summary judgment has the burden of presenting admissible evidence showing that there is an absence of any genuine issue of material fact with respect to the issues raised by the summary judgment motion. *Foster v. Traul*, 141 Idaho 890, 893, 120 P.3d 278, 281 (2005). The unsworn allegation in the amended complaint does not satisfy that burden.

The district court held that Plaintiff's statements were not protected by the First Amendment because he was speaking as a public employee rather than as a private citizen. The court reasoned:

> He argues that because his job description does not mention anything to the fact of a duty to write newspaper articles that critique the ISU administration is evidence that he was speaking as a citizen. The Court disagrees with Sadid's argument. Whether his job description requires him to write articles is not the determining factor of him being in the role of a citizen or a public employee. After reviewing Sadid's letters that were published, the Court finds that the tone of the letters is that of an employee of ISU. . . . . Furthermore, Sadid continuously argues in his brief and even in the published article itself that he was speaking as a private citizen, yet in both of the published articles he identifies himself as an ISU employee.

In so holding, the district court erred. Characterizing the issue as whether Plaintiff was speaking as a public employee or a private citizen is misleading. The issue is not whether Plaintiff identified himself as a University professor at the time he made the statements. It is also not whether his criticisms concerned administration actions that would impact his official duties or that the statements he made were based upon information he acquired while performing those duties. The fact that the speech at issue concerned the subject matter of the public employee's employment is not dispositive because "[t]he First Amendment protects some expressions related to the speaker's job." *Garcetti,* 547 U.S. at 421. The controlling issue is whether Plaintiff's statements were made pursuant to his duties as a professor at the University. *Id.*

5

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id*. In *Garcetti*, the statement at issue was a memo written by a deputy prosecutor in which he outlined his concerns that a deputy sheriff had made serious misrepresentations in an affidavit used to obtain a search warrant. In holding that the deputy prosecutor's speech was unprotected, the Supreme Court stated that he "spoke as a prosecutor fulfilling a responsibility to advise his supervisor about how best to proceed with a pending case," that he "wrote his disposition memo because that is part of what he, as a calendar deputy, was employed to do," and that "[t]he significant point is that the memo was written pursuant to [the deputy prosecutor's] official duties." *Id*. The Court then added: "Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Id*. at 421-22.

The Supreme Court distinguished between making statements pursuant to one's official duties and making statements pursuant to one's right as a citizen. The Court contrasted "speech that owes its existence to a public employee's professional responsibilities" with "the expressions made by the speaker in *Pickering*, whose letter to the newspaper had no official significance and bore similarities to letters submitted by numerous citizens every day." *Id*. at 421-22. In *Pickering v. Board of Education*, 391 U.S. 563 (1968), a teacher was dismissed for writing a letter to the editor which consisted "essentially of criticism of the Board's allocation of school funds between educational and athletic programs, and of both the Board's and the superintendent's methods of informing, or preventing the informing of, the district's taxpayers of the real reasons why additional tax revenues were being sought for the schools." *Id*. at 569. The *Pickering* Court held that the teacher's letter to the editor was protected speech.

The *Garcetti* Court explained the theoretical underpinnings of its opinion as follows:

> Employees who make public statements outside the course of performing their official duties retain some possibility of First Amendment protection because that is the kind of activity engaged in by citizens who do not work for the government. The same goes for writing a letter to a local newspaper, see *Pickering* . . . . When a public employee speaks pursuant to employment responsibilities, however, there is no relevant analogue to speech by citizens who are not government employees.

6

*Garcetti*, at 547 U.S. at 423-24.

Again, the Court referred to writing a letter to a local newspaper as in *Pickering* as a public statement made by a government employee outside the scope of performing his official duties. In his letter to the editor, the teacher in *Pickering*, identified himself as a high school teacher. He challenged the accuracy of a statement contained in a letter to the editor from the school board and school administration by saying, "I teach at the high school and I know this just isn't the case." *Pickering*, 391 U.S. at 576. His letter also included information that he obviously obtained while performing his duties as a school teacher. As the Court noted, "Teachers are, as a class, the members of a community most likely to have informed and definite opinions as to how funds allotted to the operations of the schools should be spent." *Id*. at 572. Even though the letter writer identified himself as a teacher and was criticizing the administration's allocation of funding based upon information obtained while performing duties as a teacher, the Supreme Court stated that where "the fact of employment is only tangentially and insubstantially involved in the subject matter of the public communication made by a teacher, we conclude that it is necessary to regard the teacher as the member of the general public he seeks to be." *Id*. at 574.

The issue is not whether Plaintiff spoke as a public employee, in the sense that he identified himself as a public employee and spoke about issues related to his employment based upon information obtained in his employment. It is whether his speech was pursuant to his official duties. In the instant case, there is no evidence showing that Plaintiff's official duties included making public statements on behalf of the University regarding the subject matter of his letters, nor is there evidence that his employment responsibilities included creating the statements that were published in the newspaper. Therefore, his speech was as a private citizen.

## IV.

**Did the District Court Err in Holding that Plaintiff's Speech**
**Did Not Involve a Matter of Public Concern?**

Having concluded that Plaintiff's speech was not made pursuant to his official duties, the next issue is whether it involved a matter of public concern. The district court held that it did not, stating as follows:

7

After reviewing the argument of Sadid, the case law, and the entire content, form and context of his letters, the Court disagrees with Sadid's claim that this was a matter of public concern. The Court finds that the letters contain nothing more than personal grievances against ISU regarding matters that relate directly to Sadid's interest in his employment. The content and opinions may in fact be interesting to the public; however, the value of interest alone does not make the matter a public concern. Furthermore, simply because it involves a matter that may have occurred behind close governmental doors does not make it a public concern. Sadid's statements go more to matters of an internal administrative dispute than a matter of public concern.

In determining whether any of Plaintiff's speech at issue concerns a matter of public concern, the inquiry is not his motivation for the comments or the general tone of his comments (e.g. venting personal grievances). *Connick v. Myers*, 461 U.S. 138, 148-49 (1983). Although much of the communications certainly express Plaintiff's dislike for the former University President, disappointment in the current President, and dislike for members of the administration, the appropriate analysis is whether *any* of his comments involve matters of public concern. *Id.* at 149. In his paid advertisement published on March 9, 2003, Plaintiff speculated that Idaho State University and the University of Idaho were conspiring to shift engineering to the University of Idaho so that Idaho State University could create a medical school. The issue of a creating a medical school at Idaho State University was a matter of public concern. Having concluded that there was at least one matter of public concern in his comments, we need not address whether there were others because the district court correctly granted summary judgment on an alternative ground.

## V.

**Did the District Court Err in Holding that There Was a Lack of Evidence Supporting the Allegation that Plaintiff Suffered Adverse Employment Action?**

Having concluded that Plaintiff's speech involved at least one matter of public concern, the next issue is whether he has produced evidence from which the trier of fact could reasonably find that such speech was a substantial or motivating factor in adverse employment action. To do so, he must show that there was some action by the University that constituted adverse employment action. In his amended complaint, Plaintiff alleged four actions by the Defendants that constituted retaliation for exercising his freedom of speech. They were:

(a) Failing to have the then-Dean of Engineering conduct annual evaluations of Plaintiff beginning in 2001 and for the next five years;

(b) Hiring another person as Chair of the Engineering Department rather than Plaintiff;

(c) Increasing Plaintiff's salary at the lowest percentages; and

(d) The defendant Lineberry sending an e-mail to a third party in which he referred to "Sadid's tirade with the Dean" and characterized Plaintiff as "a nut-case who cannot help himself."

**a.  Failing to conduct annual evaluations.**  In response to the allegation of not conducting annual evaluations, Defendants contend that annual evaluations were not required once Plaintiff received tenure.  They rely upon the provisions of Section IV.B. of Part 4 of the University's Faculty/Staff Handbook entitled "Evaluation of Faculty/Tenure."  Subsection 1 is entitled, "Annual Evaluation," and its first paragraph states:

> Each year the chair of a department (or unit head) must submit to the Dean of the chair's college (or appropriate superior) an evaluation of each faculty member in that department (or unit).  Any evaluation must include at least administrative access to all primary or raw evaluation data.  This evaluation, together with the opinion of higher administrators, will be used as one (1) basis for the final recommendation relative to reappointment, nonreappointment, acquisition of tenure, or other personnel action, whichever is appropriate.

Subsection 1 is followed by Subsection 2 entitled, "Tenure"; Subsection 3 entitled, "Evaluation for Tenure"; Subsection 4 entitled, "Standards of Eligibility for Tenure Status"; Subsection 5 entitled, "Award of Tenure"; Subsection 6 entitled, "Interpretations Relating to Tenure"; and then Subsection 7 entitled, "Periodic Performance Review."  The first paragraph of Subsection 7 states:

> It is the policy of the Board that at intervals not to exceed five (5) years following the award of tenure to faculty members, the performance of tenured faculty must be reviewed by members of the department or unit and the department chairperson or unit head.  The review must be conducted in terms of the tenured faculty member's continuing performance in the following general categories: (a) teaching effectiveness, (b) research or creative activities, (c) professional related services, (d) other assigned responsibilities, and (e) overall contributions to the department.

Defendants argued to the district court that pursuant to Subsection 7, once a professor is tenured, he or she only needs to be evaluated at intervals not to exceed five years.  In response,

9

Plaintiff merely cited to Subsection 1 and stated that he was entitled to annual evaluations after he was tenured.

Considering the wording of the two provisions and their relative placement in the Handbook, we agree with the district court that the Handbook by its terms does not require annual evaluations once a faculty member receives tenure. As the district court noted in denying reconsideration, the record shows evaluations of Plaintiff were done in 2000, 2003, 2005, 2006, and 2007. Since the University was not required by the Handbook to review Plaintiff annually, the failure to do so cannot constitute adverse employment action.

**b. Not hiring Plaintiff as Chair of the Department of Engineering.** The faculty unanimously recommended Plaintiff as the new Chair of the Department of Engineering, but the University hired someone else for that position, after inviting nationwide applications. The district court held that failing to hire Plaintiff as the Chair did not constitute retaliation because he never applied for that position. Plaintiff does not dispute that he never applied. He simply contends on appeal that it would have been an exercise in futility for him to have done so.

We need not decide whether there is any evidence in the record, aside from Plaintiff's assertion, from which the trier of fact could reasonably have concluded that it would have been futile for Plaintiff to have applied. He did not raise the futility issue in the district court. "The longstanding rule of this Court is that we will not consider issues that are raised for the first time on appeal." *Row v. State*, 135 Idaho 573, 580, 21 P.3d 895, 902 (2001). The district court did not err in holding that there was no evidence supporting the allegation that the failure to hire Plaintiff as Chair of the Department of Engineering was retaliatory conduct.

**c. Increasing Plaintiff's salary at the lowest percentages.** Plaintiff did not argue in the district court that there was any evidence supporting this allegation.

**d. The Lineberry e-mail.** On August 1, 2008, defendant Lineberry sent an e-mail to a third party in which he stated, "I was disappointed to learn of Sadid's tirade yesterday with the Dean, regarding the employ of [named] to help in teaching 402/502. My disappointment is not with Sadid, who is a nut-case and cannot help himself. . . . ." Plaintiff does not explain how this e-mail could possibly constitute adverse employment action, and we are likewise unable to image how it could.

In response to the Defendants' motion for summary judgment, Plaintiff was required to offer proof that he sustained some sort of adverse employment action. Absent anything that

10

could be considered adverse employment action, there could not be retaliation for his exercise of his First Amendment rights. He failed to present any such evidence, and therefore the district court did not err in holding that there was no evidence supporting this requirement. As a result, the district court did not err in dismissing Plaintiff's claim under 42 U.S.C. § 1983 that the Defendants had violated his rights under the First Amendment.

## VI.

### Did the District Court Err in Dismissing Plaintiff's Claim
### for Breach of Contract?

Plaintiff filed a claim alleging that the University breached the express terms of his employment contract and the covenant of good faith and fair dealing implied in that contract by failing to evaluate him annually. As explained above, the district court correctly held that Plaintiff's contract did not require annual evaluations. Therefore, there was also no violation of the implied covenant of good faith and fair dealing. "The implied covenant of good faith and fair dealing obligates parties to cooperate with one another and to perform the obligations imposed by their agreements. Express terms of a contract may not be overridden by those implied from the covenant of good faith and fair dealing." *Huyett v. Idaho State Univ.*, 140 Idaho 904, 910, 104 P.3d 946, 952 (2004) (citation omitted). The district court correctly dismissed Plaintiff's claim for breach of his employment contract.

## VI.

### Did the District Court Err in Failing to Award the Defendants
### Attorney Fees Pursuant to Idaho Code § 12-120(3)?

The Defendants timely requested an award of attorney fees pursuant to Idaho Code sections 12-117, 12-120(3), 12-121, and 6-918A and pursuant to 42 U.S.C. section 1988. The district court denied an award of attorney fees under all statutes. On appeal, the Defendants contend that the district court failed to award them attorney fees under Idaho Code section 12-120(3).

In arguing to the district court that they were entitled to an award of attorney fees pursuant to Idaho Code section 12-120(3), the Defendants relied upon *Willie v. Bd. of Trustees*, 138 Idaho 131, 59 P.3d 302 (2002), wherein we held, "Actions brought for breach of an

11

employment contract are considered commercial transactions and are subject to the attorney fee provision of I.C. § 12-120(3)." *Id.* at 136, 59 P.3d at 307. The district court denied the request for attorney fees under this statute on the ground that "the Complaint does not allege that a commercial transaction has taken place between the parties."

Plaintiff entitled the second cause of action in his amended complaint as, "COUNT TWO – BREACH OF EMPLOYMENT CONTRACT AND THE COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED THEREIN." In the body of the count, he alleged, "Defendant ISU materially breached the contract of employment and the covenant of good faith and fair dealing implied therein." As we held in *Willie*, where Plaintiff alleged a cause of action for breach of his employment contract, he alleged a commercial transaction with the University. Therefore, the University is entitled to an award of attorney fees under Idaho Code section 12-120(3) for defending against the breach of employment contract claim. *See Beco Constr. Co., Inc. v. J-U-B Engrs. Inc.*, 149 Idaho 294, 233 P.3d 1216 (2010). However, the other Defendants cannot recover attorney fees under this statute unless Plaintiff alleged a claim seeking to recover on a commercial transaction with them. *Jacklin Land Co. v. Blue Dog RV, Inc.*, 151 Idaho 242, ___, 254 P.3d 1238, 1245-46 (2011). He did not do so.

## VII.

### Are Defendants Entitled to an Award of Attorney Fees on Appeal?

Defendants seek an award of attorney fees on appeal pursuant to Idaho Code sections 12-120(3) and 12-121, 42 U.S.C. section 1988, and I.R.C.P. 54(e)(1). With the exception of Idaho Code section 12-120(3), Defendants do not present any argument as to how the other statutes and the rule of civil procedure apply. Therefore, we will not address their request under them. *Goldman v. Graham*, 139 Idaho 945, 947, 88 P.3d 764, 766 (2004).

Pursuant to Idaho Code section 12-120(3), the University is entitled to an award of attorney fees on appeal incurred in defending against Plaintiff's claim that the University breached his employment contract. Because the Plaintiff did not allege a commercial transaction with the other Defendants, they are not entitled to an award under this statute.

## VII.

### Conclusion

We affirm the judgment of the district court dismissing the amended complaint. We vacate the denial of attorney fees to the University and remand this case for consideration of its request for attorney fees in defending against the breach of employment contract claim. We award the University attorney fees on appeal with respect to the breach of contract claim. We affirm the denial of attorney fees to the remaining respondents, and we deny them attorney fees on appeal. We award costs on appeal to all respondents.

Justices J. JONES, W. JONES, HORTON, and J. Pro Tem BEVAN **CONCUR.**